JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

20 CV 10879

------------------------------------x
CISCO SYSTEMS, INC.

                  Plaintiff,

  -against-

SYNAMEDIA LTD. F/K/A TRITON UK BIDCO
LIMITED

                  Defendant.
------------------------------------x

Civil Action No.

**COMPLAINT FOR DAMAGES, DECLARATORY AND OTHER RELIEF**

Plaintiff Cisco Systems, Inc. ("Cisco") alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract and declaratory judgment action brought against Synamedia Ltd. f/k/a Triton UK Bidco Limited ("Synamedia") who is willfully refusing to and has explicitly stated it will not perform and discharge its liabilities and obligations related to a lease as required by the purchase agreement Synamedia entered into with Cisco. As a result of Synamedia's willful and wrongful conduct, Cisco has already been damaged by hundreds of thousands of dollars that will continue to grow into millions of dollars over the remaining lease term.

2. On April 30, 2018, Cisco and Synamedia entered into a Purchase Agreement in which Cisco, among other things, sold to Synamedia certain contractually defined assets and Synamedia assumed certain contractually defined assumed liabilities.

3. These contractually defined assumed liabilities include certain to be assigned contracts. Among those to be assigned contracts is a "Lease by and between Marlin Investments Limited and News International PLC, dated April 15, 2002, as assigned to NDS Limited" (the "Lease") for a property located in the Borough of Eastleigh in Hampshire, England known as

Chandlers Ford 2. As a result of subsequent assignments, Eastleigh Borough Council of Eastleigh House is the Landlord and Cisco International Limited, a Cisco subsidiary, and NDS Group Limited ("NDS"), are the Tenants. Synamedia acquired NDS, among other entities, as part of the Purchase Agreement.

4. Under the Lease, Landlord consent is required before the Lease can be formally assigned to (and assumed by) Synamedia.

5. Under the Purchase Agreement, including as modified by the Second Amendment to the Purchase Agreement ("Second Amendment") (collectively with the Purchase Agreement, the "Purchase Agreement"), Cisco and Synamedia are obligated to use "commercially reasonable efforts" to obtain the Landlord's consent to a "surrender" and "grant of lease" to Synamedia, or alternatively, an assignment of the Lease to Synamedia.

6. Pending the formal "surrender" and "grant of lease" or "assignment," Synamedia is required—pursuant to the express terms of the Purchase Agreement—to fully discharge all of Cisco's obligations under the Lease, including, for example, paying rent, insurance, utilities and security. Synamedia enjoys a corresponding right to use Chandlers Ford 2 and has used Chandlers Ford 2 for its operations similar to its predecessor, NDS, using Chandlers Ford 2 for its operations.

7. Cisco has worked well-beyond "commercially reasonable efforts" in excess of 21 months—investing time, project management expertise, subject-matter expertise, and goodwill capital with the Landlord and suppliers and vendors for facilities management—to effectuate a surrender and grant of Lease and later, at the direction of Synamedia, a lease assignment.

8. In contrast to Cisco's tireless efforts, Synamedia has engaged in a pattern of delay and bad faith negotiation tactics. For example, notwithstanding Cisco's numerous efforts to facilitate the surrender or grant of lease for Chandlers Ford 2, Synamedia waited six months after

the close of the Purchase Agreement to discuss with Cisco the terms of a surrender and grant of lease and then waited another six months to change course and demand that Cisco obtain a lease assignment. More recently, after completing a sublease with Cisco for a nearby property known as Chandlers Ford 1, and without notifying Cisco, Synamedia vacated Chandlers Ford 2 and moved its personnel and equipment from Chandlers Ford 2 into Chandlers Ford 1, and falsely asserted that it had no obligation under the Purchase Agreement to continue to reimburse Cisco for Lease payments and expenses for Chandlers Ford 2 even though it had previously done so since the close of the Purchase Agreement and is expressly required to do so under the Purchase Agreement.

9. As a result of its deliberate breach of the Purchase Agreement, Synamedia has not paid £476,994.73[1] in connection with the Lease broken down as follows (1) £203,098.86 in rent, (2) £5,363.87 in insurance, (3) £27,855.82 in security guard expenses, (4) £16,641.48 in maintenance costs, (5) £70,255.55 for security monitoring cancellation and termination of Chandlers Ford 2 staff after Synamedia moved out of Chandlers Ford 2, (6) £16,593.08 in owed utilities, (7) £504.96 in landscaping costs, (8) £54,750.97 in property taxes, (9) £79,499.12 in value-added taxes ("VAT"), and (10) £2,431.02 in miscellaneous costs. Further, in light of Synamedia's assertion that it is no longer obligated to pay rent and expenses under the Lease, and will not pay such rent or expenses, Cisco will be forced to pay millions of dollars over the remaining Lease term (which does not end until June 2026), even though Synamedia is expressly obligated to reimburse Cisco for these expenses under the Purchase Agreement.

10. Cisco seeks damages related to Synamedia's breach of the Purchase Agreement and Synamedia's future, anticipated breaches of the Purchase Agreement in connection with the Lease. Cisco further seeks a declaratory judgment that Synamedia must fully discharge all of its

---

[1] This is equal to approximately in excess of $625,000.00 USD as of the date of the Complaint.

obligations and liabilities in connection with the Lease. The parties have agreed that this dispute is governed by New York law and that any disputes concerning the Purchase Agreement would be heard by a state or federal court located in Manhattan, New York.

## PARTIES

11. Cisco is a California corporation with its principal place of business in San Jose, California. Cisco designs and sells a broad range of technologies that have been powering the Internet since 1984, including, but not limited to, integrating intent-based technologies across networking, security, collaboration, applications and the cloud.

12. On information and belief, Synamedia is a company incorporated under the laws of England and Wales with its principal place of business in Staines-upon-Thamas in England. On information and belief, Synamedia is a provider of video solutions to the video and pay-TV industries.

## JURSIDICTION & VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is a diversity of citizenship because it is a civil action between a California corporation (Cisco) and an England and Wales corporation (Synamedia). Further, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14. This Court has personal jurisdiction over the parties because the parties agreed under the Purchase Agreement to "irrevocably submit to the exclusive jurisdiction of the courts of the State of New York and the Federal courts of the United States of America located within the State of New York." Purchase Agreement § 10.10.

15. Venue is proper under 28 U.S.C. § 1391 because the parties agreed that "all claims arising out of this [Purchase] Agreement . . . shall be governed by, and construed in accordance

with, the internal Laws of the State of New York" and that "venue shall lie solely in Manhattan, New York." Purchase Agreement §§ 10.9, 10.10.

## UNDERLYING FACTUAL ALLEGATIONS

**I.  The Purchase Agreement and the Lease**

16. On April 30, 2018, Cisco and Synamedia entered into the Purchase Agreement. A true and a correct copy of the April 30, 2018 Purchase Agreement is attached as Exhibit A to the Complaint.

17. The Purchase Agreement was amended by the First Amendment to the Purchase Agreement (the "First Amendment") on July 3, 2018. None of the amendments to the Purchase Agreement in the First Amendment are relevant to the dispute here. For the sake of completeness, a true and correct copy of the First Amendment is attached as Exhibit B to the Complaint.

18. The parties closed on the Purchase Agreement on October 28, 2018 (the "Closing").

19. Under Section 1.1 of the Purchase Agreement, Cisco sold to Synamedia contractually defined Purchased Assets, which included, among others things, "those Contracts listed, or that are categorically described, on Part A of Schedule 1.1(c)." Purchase Agreement § 1.1.

20. Among those Contracts listed on Part A of Schedule 1.1(c) is the Lease for Chandlers Ford 2. NDS, an entity acquired by Synamedia under the Purchase Agreement, utilized Chandlers Ford 2 for its operations and was a Tenant under the Lease. Accordingly, Synamedia, through NDS, was very familiar with the Lease terms and obligations and the Chandlers Ford 2 premises. A true and correct copy of the Disclosure Letter that includes the Schedules and the Lease is attached to the Complaint as Exhibits C and D to the Complaint respectively.

21.     Under the Lease, Tenant is obligated to pay Landlord rent quarterly in advance and other expenses such as insurance. Lease Clauses 2, 7. Tenant's original rent obligation was £127,260 per quarter. Tenant's rent has subsequently increased to £142,016.50 per quarter pursuant to the Rent Review provisions in Clause 7 of the Lease.

22.     Tenant is also responsible for utilities and taxes. Lease Clause 3.6, 3.8. Further, Cisco has incurred expenses for security, maintenance, landscaping, termination of staff and other costs in connection with Chandlers Ford 2 Lease.

23.     The Lease requires the Landlord's consent for an assignment of the lease from Cisco to another party such as Synamedia. Lease Schedule 4.

24.     Section 1.5 of the Purchase Agreement addresses the transfer of Assigned Contracts that require the consent of a third party.

25.     Under Section 1.5 of the Purchase Agreement, if a to be Assigned Contract requires the consent of a third party to effectuate the transfer, and the consent is not obtained prior to the Closing, such a Contract is considered a "Restricted Asset." Purchase Agreement § 1.5(a).

26.     Section 1.5 of the Purchase Agreement also sets forth the parties' rights, obligations and liabilities in connection with Restricted Assets and the parties' obligations, in part, to obtain the required consent.

27.     Specifically, Section 1.5(b) of the Purchase Agreement states that "each Party shall use . . . commercially reasonable efforts, and shall reasonably cooperate with each other, to obtain or to cause to be obtained any requisite Consent, substitution, or amendment required to Transfer and novate to [Synamedia] all rights and obligations of [Cisco] and its Subsidiaries with respect to the Purchased Assets and the Assumed Liabilities." Section 1.5(b) further provides that "[Synamedia] . . . shall be entitled to exercise all rights and **be responsible for all obligations with**

*respect to the Purchased Assets and the Assumed Liabilities from and after the Closing Date*."

Purchase Agreement § 1.5(b) (emphasis added).

28.     Section 1.5(d) of the Purchase Agreement then states:

If any required Consent to Transfer a Restricted Asset . . . is not obtained on or prior to the Closing Date, the Parties hereby agree to use commercially reasonable efforts to implement or give effect to such arrangements (including subleasing, sublicensing or subcontracting) with respect to the underlying rights and obligations, benefits and burdens related thereto, to the extent practicable and/or permitted by applicable Law, for (i) [Synamedia] . . . *to perform and be responsible for* (and [Synamedia] . . . shall agree to perform and be responsible for) *the Liabilities of [Cisco]* or any applicable Subsidiary of Seller after the Closing Date thereunder (to the extent they would otherwise constitute Assumed Liabilities had such required Consent been obtained on or prior to the Closing Date), and for *[Synamedia] . . . to assume the Liabilities thereof* (the "*Subcontracted Restricted Asset Work*"), (ii) [Synamedia] . . . be provided all corresponding rights, benefits and payments thereunder arising or made after the Closing Date . . . in each case until the earlier of (x) such time as such Consent to Transfer the applicable Restricted Asset . . . shall have been obtained and such Transfer shall have taken place and (y) in the case of a Restricted Asset that is a Contract . . . such time as such Contract . . . shall have lapsed, terminated, expired or not have been renewed in accordance with its terms . . . .

Purchase Agreement § 1.5(d) (emphasis added).

29.     Section 1.5(e) of the Purchase Agreement then provides:

[Synamedia] agrees *to perform and discharge . . . all Liabilities of [Cisco]* and its Subsidiaries in connection with any . . . Subcontracted Restricted Asset Work . . . and in that regard [Synamedia] will . . . *promptly reimburse the reasonable costs and expenses of [Cisco]* and Affiliates related thereto . . . . To the extent that a Consent to Transfer to [Synamedia] . . . with respect to a particular Restricted Asset . . . is obtained after the Closing Date, the Parties agree that upon the receipt of such Consent (I) such assets shall be considered Purchased Assets for all purposes of this Agreement and (II) such obligations will no longer be considered to be Subcontracted Restricted Asset Work, but will instead be deemed to be Assumed Liabilities for all purposes of this Agreement.

Purchase Agreement § 1.5(e) (emphasis added).

30.     Finally, Section 1.5(g) states:

Provided that [Cisco] and its Affiliates comply with their respective obligations under Sections 1.5(b)-(e) with regard to seeking Consents, the failure to obtain any Consent . . . for the Transfer of any Purchased Asset to [Synamedia] . . . of any

7

>Contract that was intended to be an Assigned Contract . . . or any facts, circumstances, effects or consequences resulting from any of the foregoing, shall not, individually or in the aggregate, give rise to any liability whatsoever of [Cisco] or its Affiliates arising out of or relating to such failure . . . .

Purchase Agreement § 1.5(g).

31.     In sum, Section 1.5 makes clear that Synamedia became responsible for all liabilities and obligations in connection with the Lease at the Closing Date and continues to be obligated for all liabilities with respect to the Lease to this day and through the end of the Lease.

## II.     The Second Amendment to the Purchase Agreement

32.     On the same date of the Closing of the Purchase Agreement, October 28, 2018, the parties entered into the Second Amendment to the Purchase Agreement (the "Second Amendment").  A true and correct copy of the Second Amendment is attached hereto as Exhibit E to the Complaint.

33.     In the Second Amendment, the parties agreed to insert a new Section 5.30 to the Purchase Agreement.  In particular, the parties inserted the following provision for Section 5.30(c):

>Each of [Cisco] and [Synamedia] shall . . . use commercially reasonable efforts acting collaboratively and in good faith to simultaneously:
>
>(i) complete a surrender to the landlord of Chandlers Ford Lease 1 and Chandlers Ford Lease 2 (as defined in the Disclosure Letter); and
>
>(ii) arrange for the grant of leases by the landlord of the whole of the property that is (as at the date of this Agreement) demised to [Cisco] or one of its Subsidiaries under the Chandlers Ford Lease 2, and the ground and first floors of the property that is (as at the date of this Agreement) part of the premises demised under the Chandlers Ford Lease 1 (whereby it is agreed that [Cisco] shall use commercially reasonable efforts to work with [Synamedia] to negotiate the grant of such leases which shall have a term of 10 years and contain a tenant only break right on the 5th anniversary of the term commencement date but failing which shall in any event be on no worse terms than Chandlers Ford Lease 1 and Chandlers Ford Lease 2), to NDS Limited,
>
>PROVIDED THAT in the event that (i) and (ii) is not achieved:
>
>(iii) simultaneously;

(iv) on terms reasonably acceptable to both [Cisco] and [Synamedia]; and

(v) within a period of four months following the Closing,

it being agreed that, notwithstanding anything herein to the contrary, the grant of such leases to NDS Limited on materially similar terms and conditions as are contained in Chandlers Ford Lease 1 and Chandlers Ford Lease 2 as at the date hereof, shall be deemed reasonably acceptable terms for the foregoing purpose), then either Party may, by written notice to the other Party, elect that, in lieu of the actions contemplated in clauses (i) and (ii) above, instead:

(vi) [Cisco] will use commercially reasonable efforts to promptly procure an assignment of the whole of Chandlers Ford Lease 2 (in accordance with its obligations already set out in Section 1.1 and Section 1.5 of the Purchase Agreement) to NDS Limited; and

(vii) [Cisco] shall use commercially reasonable efforts to grant to [Synamedia] a sub-lease(s) of the ground and first floors of the property known as Chandlers Ford 1 (which comprises part of the property currently demised under the Chandlers Ford Lease 1) to NDS Limited,

in accordance with the terms of the Chandlers Ford Lease 2 and the Chandlers Ford Lease 1, as applicable.

34. In short, under the new Section 5.30(c) of the Purchase Agreement, Cisco was agreed to use "commercially reasonable efforts" to arrange for a grant and surrender of lease or alternatively – at the direction of Synamedia – an assignment of the lease.

**III. Synamedia Uses the Chandlers Ford 2 Premises, Cisco Works to Effectuate a Grant of Lease and Later an Assignment for Chandlers Ford 2 While Synamedia Delays and Engages in Bad Faith Conduct**

35. After the Closing, Synamedia began enjoying the benefits of the Lease by using equipment and personnel (who were formerly NDS personnel) at the Chandlers Ford 2 premises for its operations.

36. Synamedia – fully aware of its obligations under the Purchase Agreement to perform and discharge its obligations under the Lease as evidenced not only by its use of Chandlers Ford 2 and the Purchase Agreement's plain terms, but also its predecessor NDS being a Tenant to the Lease – began paying Cisco for rent and other expenses in connection with the Lease.

9

37. Immediately after the Closing, Cisco began working to procure a surrender and grant of lease to Synamedia for Chandlers Ford 2. Cisco reached out to, met and worked with Synamedia for approximately a year concerning a surrender and grant of lease for Synamedia for Chandlers Ford 2.

38. Cisco also arranged meetings between Synamedia and the Landlord to show to the Landlord that Synamedia was a viable tenant for Chandlers Ford 2. The Landlord was made aware of Cisco's sale to Synamedia and Synamedia's occupation of Chandlers Ford 2. At no point did the Landlord claim that Synamedia had no legal right to occupy Chandlers Ford 2.

39. Cisco also introduced Synamedia to Cisco suppliers and vendors for facilities management at Chandlers Ford 2.

40. In contrast to Cisco's prompt and extensive efforts, Synamedia engaged in extensive delay. For example, Synamedia waited until May 2019, more than six months after the Closing, to discuss with Cisco the key and material terms of a new Chandlers Ford 2 lease to present to the Landlord known as Heads of Terms ("HoTs").

41. Despite Synamedia's delays, Cisco worked with Synamedia to reach an agreement on the HoTs and, in an effort to facilitate such an agreement, Cisco even was willing to provide money to the Landlord that the Landlord would then use to pay Synamedia to make repairs to Chandlers Ford 2, including, for example, replacing the air conditioning, painting, refitting the floors and other repairs.

42. Cisco and Synamedia reached an agreement on the HoTs and presented them to the Landlord. The Landlord expressed concern regarding the HoTs including, for example, the lease term and Synamedia's right to break the lease. Rather than working to address those concerns, Synamedia decided in November 2019, more than a year after the Closing, to invoke its right to

pursue an assignment under Section 5.30(c) of the Purchase Agreement.

43.     When Synamedia invoked its right to pursue an assignment, Cisco participated in numerous meetings with Synamedia (which, in certain instances, included the Landlord) for nearly a year to secure an assignment. To facilitate Synamedia's agreement to an assignment, Cisco even offered to allow Synamedia to access a fund of £800,000.00 (approximately $1.2 million USD) (rather than having Cisco pay the Landlord and the Landlord pay Synamedia) that Synamedia could use to fund Synamedia's repairs to Chandlers Ford 2 even though Synamedia refused to provide, when requested, evidence of the planned repairs.

44.     Despite Cisco's efforts, Synamedia rejected every proposed assignment.

45.     Synamedia's delay tactics then turned into bad faith conduct. Specifically, Synamedia began meeting with the Landlord without Cisco present. Further, on information and belief, in late spring or early summer 2020, Synamedia began planning to move out of Chandlers Ford 2.

46.     In July 2020, just days after Cisco and Synamedia completed a sublease for a nearby property known as Chandlers Ford 1, and without notifying Cisco, Synamedia began moving out of Chandlers Ford 2 and moving equipment from Chandlers Ford 2 into Chandlers Ford 1. At the same time Synamedia was moving out of Chandlers Ford 2, it demanded that Cisco obtain an assignment for Chandlers Ford 2 within three weeks with terms that the Landlord had already rejected. On information and belief, Synamedia had no intention of agreeing to such an assignment even if Cisco could obtain an agreement from the Landlord.

47.     In addition to demanding an assignment that the Landlord previously rejected and Synamedia had no intention of entering into, Synamedia took the bad faith position, in direct contravention of the plain language of the Purchase Agreement, that once it completely vacated

Chandlers Ford 2, it would no longer be liable for any liabilities or obligations in connection with the Lease.

### IV. Synamedia Refuses to Reimburse Cisco for Chandlers Ford 2 Lease Payments and Expenses in Direct Violation of the Purchase Agreement

48. In or around August 2020, Synamedia completed its move out of Chandlers Ford 2.

49. In August and September 2020, Cisco business personnel met multiple times with Synamedia business personnel to try to resolve the dispute.

50. In further efforts to resolve the dispute without litigation, Cisco in-house counsel met with in-house counsel for Synamedia. Despite these efforts, the parties could not resolve the dispute.

51. Since Synamedia has vacated Chandlers Ford 2 in or around August 2020, Cisco has paid £476,994.73 in Lease payments and related expenses for Chandlers Ford 2 and Synamedia has not reimbursed Cisco as follows: (1) £13,743.53 for rent from August 23 to August 31, 2020, (2) £47,338.83 for rent in September 2020, (3) £142,016.50 for rent from October 2020 through December 2020, (4) £5,363.87 for insurance, (5) £16,641.48 for maintenance expenses, (6) £27,855.82 for security guard expenses, (7) £70,255.55 for security monitoring cancellation (£22,106.80) and termination of Chandlers Ford 2 staff (£22,309.78 for termination of catering and cleaning staff and £25,838.97 for termination of CBRE staff) after Synamedia moved out of Chandlers Ford 2, (8) £16,593.08 for utilities, (9) £504.96 in landscaping costs, (10) £690.67 to fix a car park barrier, (11) £668.02 for waste units and snack machines, (12) £54,750.97 in property taxes, (13) £79,499.12 for VAT, and (14) £1,072.33 in other miscellaneous expenses.

52. Despite (a) the clear obligation under the Purchase Agreement to perform and discharge its obligations under the Lease, (b) Synamedia predecessor NDS being a Tenant to the

Lease and user of the Chandlers Ford 2 premises, and (c) Synamedia's previously performing and discharging its obligations under the Lease pursuant to the Purchase Agreement, Synamedia informed Cisco that it will not reimburse Cisco for these Lease payments and related expenses incurred and going forward.

53. Synamedia's refusal to reimburse Cisco is a willful, deliberate and wrongful breach and repudiation of the Purchase Agreement.

## COUNT I (BREACH OF CONTRACT)

54. Cisco re-alleges and incorporates by reference all allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55. Cisco and Synamedia entered into the Purchase Agreement.

56. Cisco performed all of its obligations under the Purchase Agreement or was otherwise excused from performing due to Synamedia's conduct.

57. Synamedia willfully breached the Purchase Agreement by knowingly and deliberately not performing and discharging all of its liabilities and obligations under the Purchase Agreement in connection with the Lease, including, but not limited to, the payment of (1) rent, (2) insurance, (3) security guard expenses, (4) termination of security and building staff fees, (5) maintenance costs, (6) utilities, and (7) taxes.

58. Cisco suffered damages as a direct and proximate result of Synamedia's willful breach of the Purchase Agreement in the amount to be proven at trial.

## COUNT II (ANTICIPATORY BREACH)

59. Cisco re-alleges and incorporates by reference all allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

60. Cisco and Synamedia entered into the Purchase Agreement.

61. Cisco performed all of its obligations under the Purchase Agreement or was otherwise excused from performing due to Synamedia's conduct.

62. Synamedia has clearly and positively indicated by words or conduct that it will breach and continue to breach the Purchase Agreement by knowingly and willfully failing and continuing to fail to perform and discharge all of its liabilities and obligations in connection with the Lease.

63. As a result of Synamedia's knowing and willful anticipatory breach of the Purchase Agreement, Cisco has been harmed in an amount to be proven at trial.

## COUNT III (DECLARATORY JUDGMENT)

64. Cisco re-alleges and incorporates by reference all allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

65. Cisco and Synamedia entered into the Purchase Agreement.

66. Cisco performed all of its obligations under the Purchase Agreement or was otherwise excused from performing due to Synamedia's conduct.

67. An actual controversy now exists between Cisco and Synamedia with regards to the Purchase Agreement and whether Synamedia must fully discharge and perform all of Cisco's liabilities and obligations in connection with the Lease.  Accordingly, a judicial declaratory is reasonable, necessary, and appropriate in this action to resolve the dispute between Cisco and Synamedia.

68. Cisco requests a declaratory judgment from this Court that Synamedia is obligated under the Purchase Agreement to fully discharge and perform all of Cisco's liabilities and obligations under the Lease, including, but not limited to reimbursing Cisco for Lease payments

and related expenses, until the earlier of the assignment, novation and/or transfer of the Lease to Synamedia with the Landlord's consent or termination of the Lease in accordance with its terms.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Cisco Systems, Inc. demands relief against Defendant Synamedia Ltd. f/k/a Triton UK Bidco Limited as follows:

(1)     Judgment in favor of Plaintiff Cisco Systems, Inc. on all Counts of the Complaint;

(2)     Award Plaintiff Cisco Systems, Inc. damages in an amount to be proven at trial;

(3)     Judgment declaring that Defendant Synamedia Ltd. is obligated under the Purchase Agreement to fully discharge and perform all of Plaintiff Cisco Systems, Inc.'s liabilities and obligations under the Lease, including, but not limited to reimbursing Cisco for Lease payments and related expenses, until the earlier of the assignment, novation and/or transfer of the Lease to Defendant Synamedia Ltd. with the Landlord's consent or termination of the Lease in accordance with its terms;

(4)     Award Plaintiff Cisco Systems, Inc.'s prejudgment interest, together with costs of the suit; and

(5)     For such other and further relief as may be deemed just and proper by the Court.

Dated: December 23, 2020

Respectfully Submitted,

_____
David S. Almeida
J. Erik Connolly (*pro hac vice forthcoming*)
Christopher J. Letkewicz (*pro hac vice forthcoming*)
Lauren C. Tortorella (*pro hac vice forthcoming*)
BENESCH, FRIEDLANDER, COPLAN &
  ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
Email:   dalmeida@beneschlaw.com
         econnolly@beneschlaw.com
         cletkewicz@beneschlaw.com
         ltortorella@beneschlaw.com

*Attorneys for Plaintiff Cisco Systems, Inc.*